Kelly E. Nokes (Mont. Bar No. 39465862)
Western Environmental Law Center
208 Paseo del Pueblo Sur, No. 602
Taos, NM 87571
Ph: (575) 613-8051
nokes@westernlaw.org

Susan Jane M. Brown, *admitted pro hac vice*
Western Environmental Law Center
4107 NE Couch St.
Portland, OR 97232
Ph: (503) 680-5513
brown@westernlaw.org

John R. Mellgren, *admitted pro hac vice*
Western Environmental Law Center
120 Shelton McMurphey Blvd., Ste. 340
Eugene, OR 97401
Ph: (541) 359-0990
mellgren@westernlaw.org

*Counsel for Plaintiffs*

Marla Fox, *admitted pro hac vice*
P.O. Box 13086
Portland, OR 97213
Ph: (651) 434-7737
mfox@wildearthguardians.org

*Counsel for Plaintiff WildEarth Guardians*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| WILDEARTH GUARDIANS, a non-profit organization; and WESTERN WATERSHEDS PROJECT, a non-profit organization, | Lead Case No. CV 19-56-M-DWM<br><br>Member Case No. CV 19-60-M-DWM |

<table>
<tr><td>

Plaintiffs,

vs.

CHIP WEBER, in his capacity as Forest
Supervisor for the Flathead National
Forest; the UNITED STATES FOREST
SERVICE, a federal agency;
MARGARET EVERSON, in her capacity
as Acting Director of the U.S. Fish and
Wildlife Service; and the UNITED
STATES FISH AND WILDLIFE
SERVICE, a federal agency;

Federal-Defendants.

</td><td>

PLAINTIFFS' RESPONSE IN
OPPOSITION TO FEDERAL
DEFENDANTS' MOTION TO
DISMISS

</td></tr>
</table>

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................ 7

II.   BACKGROUND ......................................................................... 8

III.  STANDARDS OF REVIEW ...................................................... 12

IV.   ARGUMENT.............................................................................. 14

      A.    Claim Two Is Not Barred by Any Statute of Limitations............. 14

      B.    Guardians' Claim Two Is Timely. ............................................... 16

      C.    Guardians' Claim Two is Ripe for Judicial Review.................... 23

V.    CONCLUSION .......................................................................... 33

CERTIFICATE OF COMPLIANCE.................................................... 35

# TABLE OF AUTHORITIES

## Cases

*Abbott Labs. v. Gardner*,
  387 U.S. 136 (1967) ................................................................ 23, 32

*AE ex rel. Hernandez v. Cnty. of Tulare*,
  666 F.3d 631 (9th Cir. 2012) ............................................... 14

*Balistreri v. Pacifica Police Dep't.*,
  901 F.2d 696 (9th Cir. 1990) ............................................... 14

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................... 14, 15

*Bennett v. Spear*,
  520 U.S. 154 (1997) ........................................................... 18, 28

*Califano v. Sanders*,
  430 U.S. 99 (1977) .............................................................. 23

*California v. U.S. Dep't of Agric.*,
  575 F.3d 999 (9th Cir. 2009) ............................................... 31

*Casumpang v. Int'l Longshoremen's & Warehousemen's Union*,
  269 F.3d 1042 (9th Cir. 2001) ............................................. 13

*Cedars-Sinai Medical Center v. Shalala*,
  125 F.3d 765 (9th Cir. 1997) ............................................... 15

*Center for Biological Diversity v. Ilano*,
  928 F.3d 774 (9th Cir. 2019) ........................................... 28, 29

*Chance v. Zinke*,
  898 F.3d 1025 (10th Cir. 2018) ........................................... 15

*Citizens for Better Forestry v. U.S. Dep't of Agric.*,
  341 F.3d 961 (9th Cir. 2003) ........................................... 19, 27

*Courthouse News Service v. Planet*,
  750 F.3d 776 (9th Cir. 2014) ............................................... 13

*Crown Coat Front Co. v. United States*,
  386 U.S. 503 (1967) ........................................................................ 17

*Ctr. for Sierra Nevada Conservation v. U.S. Forest Serv.*,
  832 F. Supp. 2d 1138 (E.D. Cal. 2011) .......................................... 9

*Defenders of Wildlife v. Hall*,
  807 F. Supp. 2d 972 (D. Mont. 2011) ........................................... 32

*Dreier v. United States*,
  106 F.3d 844 (9th Cir. 1996) ......................................................... 13

*Ecology Ctr. v. Castaneda*,
  574 F.3d 652 (9th Cir. 2009) ......................................................... 29

*Ecology Ctr., Inc. v. U.S. Forest Serv.*,
  192 F.3d 922 (9th Cir. 1999) ......................................................... 29

*Gordon v. National Youth Work Alliance*,
  675 F.2d 356 (D.C. Cir. 1982) ....................................................... 15

*Gros Ventre Tribe v. United States*,
  344 F. Supp. 2d 1221 (D. Mont. 2004), *aff'd* 469 F.3d 801 (9th Cir. 2006) ........ 21

*Hells Canyon Preservation Council v. U.S. Forest Service*,
  593 F.3d 923 (9th Cir. 2010) ......................................................... 21

*High Sierra Hikers Ass'n v. Blackwell*,
  390 F.3d 630 (9th Cir. 2004) .................................................... 19, 26

*Idaho Conservation League v. Guzman*,
  766 F. Supp. 2d 1056 (D. Idaho 2011) ........................................... 9

*Marshall County Health Care Authority v. Shalala*,
  988 F.2d 1221 (D.C. Cir. 1993) ..................................................... 15

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
  521 F.3d. 1097 (9th Cir. 2008) ...................................................... 14

*Mont. Snowmobile Ass'n v. Wildes*,
  103 F. Supp. 2d 1239 (D. Mont. 2000) ...................................... 21, 28

*Mt. Adams Veneer Co. v. United States*,
   896 F.2d 339 (9th Cir. 1990) ...................................................................... 32

*Ohio Forestry Ass'n, Inc. v. Sierra Club*,
   523 U.S. 726 (1998) ...................................................................... passim

*Or. Nat. Desert Ass'n v. Shuford*,
   Civ. No. 06-242-AA, 2007 WL 1695162 (D. Or. June 8, 2007) ........................ 29

*Or. Nat. Resources Council v. Harrell*,
   52 F.3d 1499 (9th Cir. 1995) ........................................................................ 25

*Pride v. Correa*,
   719 F.3d 1130 (9th Cir. 2010) ................................................................. 13, 30

*S. Utah Wilderness All. v. Burke*,
   908 F.3d 630 (10th Cir. 2018) ...................................................................... 32

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ...................................................................... 13

*Supermail Cargo, Inc. v. United States*,
   68 F.3d 1204 (9th Cir. 1995) ........................................................................ 14

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) ................................................................. 12, 13

*Whitman v. Am. Trucking Ass'n*,
   531 U.S. 457 (2001) ...................................................................................... 27

*WildEarth Guardians v. Jeffries*,
   370 F. Supp. 3d 1208 (D. Or. 2019) ............................................................... 9

*WildEarth Guardians v. Montana Snowmobile Ass'n*,
   790 F.3d 920 (9th Cir. 2015) ......................................................... 9, 18, 26, 29

*Wildlands CPR, Inc. v. U.S. Forest Serv.*,
   872 F. Supp. 2d 1064 (D. Mont. 2012) ......................................................... 18

*Wind River Mining Corp. v. United States*,
   946 F.2d 710 (9th Cir. 1991) ................................................................. 16, 17

*Winter Wildlands Alliance v. U.S. Forest Serv.*,
  2013 WL 1319598, No. 1:11-CV-586-REB (D. Idaho Mar. 29, 2013) .............. 10


**Statutes**

5 U.S.C. § 551(4) ................................................................................. 18
5 U.S.C. § 551(13) ............................................................................... 18
5 U.S.C. § 704 ...................................................................................... 17
28 U.S.C. § 2401(a) ...............................................................14, 15, 16


**Other Authorities**

Exec. Order 11644 (February 8, 1972) ...............................8, 10, 12, 18
Exec. Order 11989 (May 24, 1977) ...................................................... 8


**Rules**

Fed. R. Civ. P. 12(b)(1) .......................................................12, 14, 15
Fed. R. Civ. P. 12(b)(6) .......................................................14, 15, 16


**Regulations**

36 C.F.R. Part 212 ........................................................................... 8, 10
36 C.F.R. § 212.50(a) ............................................................................. 9
36 C.F.R. § 212.51(a) ............................................................................. 9
36 C.F.R. § 212.51(a)(3) ........................................................................ 9
36 C.F.R. § 212.55(b) ................................................................9, 12, 25
36 C.F.R. §§ 212.1-261.55 .................................................................... 8
36 C.F.R. § 212.80 ............................................................................... 10
36 C.F.R. § 212.81 ............................................................................... 10
36 C.F.R. § 212.81(a) (2005) ................................................................ 9
36 C.F.R. § 212.81(b) .......................................................................... 11
36 C.F.R. § 212.81(c) .......................................................................... 10
36 C.F.R. § 212.81(d) .......................................................................... 10
36 C.F.R. § 261.13 ................................................................................. 9
70 Fed. Reg. 68,264 (Nov. 9, 2005) ..................................................... 8
80 Fed. Reg. 4,500 (Jan. 28, 2015) ............................................... 10, 21

# I.   INTRODUCTION

Plaintiffs WildEarth Guardians and Western Watersheds Project (collectively "Guardians") oppose the September 12, 2019 Motion to Dismiss Claim Two of Guardians' First Amended Complaint (hereafter "Complaint") filed by Federal Defendants Chip Weber, United States Forest Service, Margaret Everson, and United States Fish and Wildlife Service (hereafter "Forest Service").[1] (Defs.' Motion, Doc. 28).

This Court should reject the Forest Service's first argument that the winter travel management challenge under Claim Two is barred by the statute of limitations because it confuses the final agency action at issue. (Doc. 29 at 8.) Actually, Guardians challenge the Forest Service's 2018 decision to adopt decade-old over-snow vehicle designations for the Flathead National Forest in northwestern Montana without ensuring compliance with the Travel Management Rule, despite fundamental changes to the agency's winter travel planning rules in recent years. (Doc. 23 at 70-72.) This Court should reject the Forest Service's second argument that Claim Two is unripe because the agency itself asserts that it completed winter travel planning in its 2018 decision. Accordingly, this Court

---

[1] Because Claim Two of Guardians' Complaint is only against the Forest Service, we reference the Forest Service only.

should deny the Forest Service's motion to dismiss, and allow the parties to brief these claims in a motion for summary judgment.

## II.    BACKGROUND

### Executive Order 11644 and the Travel Management Rule

In 1972, President Nixon issued Executive Order 11644 to address the increasing environmental damage to federal public lands from off-road vehicles. Exec. Order 11644 (February 8, 1972). President Carter amended this Executive Order in 1977 to further protect public lands from off-road vehicle use impacts. Exec. Order 11989 (May 24, 1977). The Executive Orders obligate the Forest Service to "establish policies and provide for procedures that will ensure the use of off-road vehicles on public lands will be controlled and directed so as to protect the resources of those lands, to promote the safety of all users of those lands, and to minimize conflicts among the various uses of those lands." Exec. Order 11644 at § 1. Off-road vehicles include over-snow vehicles. *Id.* § 2(3).

The Forest Service issued the 2005 Travel Management Rule to implement the requirements of Executive Order 11644. 70 Fed. Reg. 68,264 (Nov. 9, 2005) (codified at 36 C.F.R. §§ 212.1-261.55). It consists of Subparts A (Administration of the Forest Transportation System), B (Designation of Roads, Trails, and Areas for Motor Vehicle Use), and C (Use by Over-Snow Vehicles). 36 C.F.R. Part 212.

Subpart B requires each national forest to designate motor vehicle use on roads, trails, and areas, and prohibits any use not in accordance with those designations. 36 C.F.R. §§ 212.50(a), 212.51(a), 261.13. It requires the Forest Service to consider with the objective of minimizing damage to forest resources, harassment of wildlife and significant disruption of wildlife habitats, and conflicts between uses when deciding which trails and areas should be open to motorized off road vehicle use ("minimization criteria"). 36 C.F.R. § 212.55(b).[2] It expressly exempts over-snow vehicles from the designation requirements. *Id.* at § 212.51(a)(3).

**Winter Travel Management**

Before 2015, the Forest Service interpreted Subpart C as giving it discretion to determine whether to regulate over-snow vehicle use at all on National Forest System lands. 36 C.F.R. § 212.81(a) (2005) ("Use by over-snow vehicles on . . . roads and . . . trails and in areas . . . may be allowed, restricted, or prohibited."). In

_____

[2] Compliance with the minimization criteria is mandatory. *WildEarth Guardians v. Montana Snowmobile Ass'n*, 790 F.3d 920, 932 (9th Cir. 2015) ("mere consideration . . . is not sufficient"); *Idaho Conservation League v. Guzman*, 766 F. Supp. 2d 1056, 1073 (D. Idaho 2011) (rejecting analysis that failed to show "how the selected routes were designed 'with the objective of minimizing' impacts"); *Ctr. for Sierra Nevada Conservation v. U.S. Forest Serv.*, 832 F. Supp. 2d 1138, 1146 (E.D. Cal. 2011) (requiring agency show that it "(1) considered ORV impacts . . . and (2) made efforts to minimize these impacts."); *WildEarth Guardians v. Jeffries*, 370 F. Supp. 3d 1208 (D. Or. 2019) (rejecting analysis that "fail[ed] to demonstrate, at the 'granular' area-and-trail-level . . . how the minimization criteria were evaluated and implemented").

2013, a district court held the agency's interpretation violated Executive Order

11644 and ordered the Forest Service to revise its winter travel management rules.

*Winter Wildlands Alliance v. U.S. Forest Serv.*, 2013 WL 1319598, No. 1:11-CV-

586-REB (D. Idaho Mar. 29, 2013) (explaining over-snow vehicle designations

"*must* be made and they *must* be based on the [minimization] criteria") (emphasis

in original).

In 2015, the Forest Service revised Subpart C to eliminate the loophole for

over-snow vehicles. 80 Fed. Reg. 4,500 (Jan. 28, 2015), *codified at* 36 C.F.R. part

212, Subpart C. The 2015 Subpart C rule requires winter travel planning for all

National Forest lands that receive enough snowfall for over-snow vehicle use to

occur. 36 C.F.R. §§ 212.80, 212.81. Winter travel plans must designate the specific

roads, trails, and areas that are open to over-snow vehicle use, and the remaining

area on the forest is closed to use. *Id.* When making the use designations, the

Forest Service must apply the minimization criteria. *Id.* § 212.81(d). The winter

travel planning process must undergo public participation, and results in an over-

snow vehicle use map that shows the designations. *Id.* §§ 212.81(c), (d).

The 2015 Subpart C rule includes a so-called "grandfather provision" that

allows the Forest Service to avoid completing a new winter travel plan and instead

publish an over-snow vehicle use map adopting previous decisions that restrict

over-snow vehicle use, if those decisions underwent public involvement and the

agency proposes no changes to them. *Id.* § 212.81(b). The Forest Service can only use the grandfather provision to avoid completing a new winter travel plan if its prior decisions complied with the minimization criteria and other substantive criteria of the 2015 Subpart C rule. *Id.*; (Doc. 23 at 13-14.)

### Flathead National Forest Winter Travel Management

The Forest Service approved the revised Flathead National Forest 2018 Land and Resource Management Plan ("2018 Forest Plan") in a December 2018 final Record of Decision ("Decision"), the impacts of which are analyzed in a final environmental impact statement ("FEIS"). (Docs. 23 at 3; 29-1 at 8.) Although it revised and replaced much of the Flathead's previous 1986 Forest Plan, the 2018 Forest Plan adopted in full the over-snow vehicle designations and over-snow vehicle use map from a 2006 amendment to the prior plan. (Doc. 23 at 57-60.)

In its 2018 Decision, the Forest Service stated that adoption of the 2006 winter travel designations and map completed its obligations under Subpart C. (Docs. 23 at 57; 29-1 at 5) ("The Forest Service also has completed subpart C through amendment 24 to the 1986 land management plan, and that is displayed in the Forest's Over-Snow Vehicle Use Map (OSVUM) as required by 36 CFR 212 subpart C."). The Forest Service relied on the grandfather provision of the 2015 Subpart C rule to avoid conducting winter travel planning, despite the previous designations occurring more than ten years ago. (Docs. 23 at 64; 29 at 11). The

2006 designations do not comply with the 2015 Subpart C rule because they specify areas closed to over-snow vehicle use, leaving the remainder of the Flathead open to cross-country winter motorized use, and the agency did not apply the minimization criteria in making the designations. (Doc. 23 at 58, 64-65.)

The Forest Service also allocated 567 new acres as suitable for winter motorized use, and asserted it complied with the minimization criteria in doing so. (Docs. 23 at 63-64; 29-1 at 5-7) ("My decision to identify new areas suitable for motorized over-snow vehicles requires me to consider, with the objective of minimizing, the effects of that identified suitability on the resources and uses listed in 36 CFR 212.55(b) per the level of effects at the programmatic scale."); (Doc. 29-1 at 6) ("I believe my decision represents the feasible, prudent, and reasonable application of these criteria").

At issue in Guardians' Claim Two is the Forest Service's Decision to adopt the 2018 Forest Plan—including the 2006 designations and new suitability allocations—without complying with the Travel Management Rule and Executive Order 11644.

## III.   STANDARDS OF REVIEW

The Forest Service moves to dismiss Guardians' Claim Two for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). Rule 12(b)(1) jurisdictional attacks can be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242

(9th Cir. 2000). Here, the Forest Service brings a facial challenge because no underlying facts are in dispute.[3] A facial challenge to jurisdictional allegations contends that the allegations "are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039.

In a facial challenge, "all factual allegations" in a plaintiff's complaint "are taken as true and all reasonable inferences are drawn in [plaintiff's] favor." *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2010). In reviewing matters outside the pleadings, the Court must "resolve all disputes of fact in favor of the nonmovant . . . similar to the summary judgment standard." *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996). The party moving to dismiss for lack of subject matter jurisdiction "should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Casumpang v. Int'l Longshoremen's & Warehousemen's Union*, 269 F.3d 1042, 1060-61 (9th Cir. 2001).

---

[3] To the extent the Forest Service attempts to convert this motion to dismiss into a factual attack by including Exhibit 1, *see Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004), that attempt fails because the information in Exhibit 1 is consistent with and supports Guardians' allegations in the complaint. *See Courthouse News Service v. Planet*, 750 F.3d 776, 780 (9th Cir. 2014) (construing a motion to dismiss as facial where it did not contest the truth of the complaint's allegations). The Court should construe the Forest Service's motion to dismiss as a facial attack, wherein "the court's analysis is confined to the allegations in the complaint and any exhibits attached to the complaint." *White*, 227 F.3d at 1242.

A portion of the Forest Service's attack, however, is not appropriately brought under Fed. R. Civ. P. 12(b)(1). Rather, the proper means to raise a defense under a statute of limitations is by Fed. R. Civ. P. 12(b)(6). *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206, n.2 (9th Cir. 1995) ("because the question of whether Supermail's claim is barred by the statute of limitations is not a jurisdictional question, it should have been raised through a 12(b)(6) motion to dismiss for failure to state a claim, not a Rule 12(b)(1) motion").

To survive a 12(b)(6) motion to dismiss, a plaintiff need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court must accept the facts in the complaint as true and construe them in the light most favorable to the plaintiff. *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d. 1097, 1104 (9th Cir. 2008) (citing *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990)).

## IV.   ARGUMENT

### A.   Claim Two Is Not Barred by Any Statute of Limitations.

As an initial matter, the six-year statute of limitations under 28 U.S.C. § 2401(a) that the Forest Service asserts applies here is not jurisdictional, and

14

therefore the agency has not asserted grounds for dismissal under Fed. R. Civ. P. 12(b)(1). (Doc. 29 at 6.) The statute of limitations under section 2401(a) is not jurisdictional. *Cedars-Sinai Medical Center v. Shalala*, 125 F.3d 765, 770 (9th Cir. 1997) (explaining section 2401(a) "does not speak of jurisdiction, but erects only a procedural bar"); *Chance v. Zinke*, 898 F.3d 1025, 1030-1033 (10th Cir. 2018) (holding the same in discussing more recent Supreme Court precedent about jurisdiction).

Proper classification of this motion impacts the standard of review and evidence this Court considers. Courts apply more scrutiny to factual allegations under a Rule 12(b)(1) motion, and a court may consider materials outside the pleadings. In contrast, under Rule 12(b)(6) a plaintiff need only allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Moreover, a Rule 12(b)(6) motion may be entertained only if materials outside of the pleadings are not needed to resolve the motion. *Gordon v. National Youth Work Alliance*, 675 F.2d 356, 360 (D.C. Cir. 1982). If materials outside of the complaint are needed, the court must convert the motion into one for summary judgment, and afford the parties a reasonable opportunity to present materials pertinent to a Rule 56 motion. *Marshall County Health Care Authority v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993).

Because Guardians' complaint alleges facts that support Claim Two as a challenge to agency action taken in 2018, well within the six-year statute of limitations under section 2401(a), this Court should deny the Forest Service's motion under Rule 12(b)(6). However, should the Court determine that Rule 12(b)(1) applies, Guardians also meets that standard, and the motion to dismiss should be denied.

### B.  Guardians' Claim Two Is Timely.

The Forest Service's argument that Claim Two is barred by the statute of limitations fails because the agency focuses on the incorrect action. Guardians is not challenging the Forest Service's 2006 decision that adopted winter travel designations. (Doc 29 at 8.) Rather, Guardians challenges the Forest Service's 2018 Decision that concludes the agency completed Subpart C by adopting the 2006 designations in its 2018 Forest Plan. (Doc. 23 at 70-72.) Because Guardians' challenge comes less than one year following that 2018 Decision, it is well within the general six-year statute of limitations applicable to civil actions against the United States, 28 U.S.C. § 2401(a), and is timely.

Claim Two is timely because it is filed within six years of when the right of action first accrued, which is the date the Forest Service signed its final Record of Decision: December 24, 2018. (Doc. 29-1 at 8.); 28 U.S.C. § 2401(a); *Wind River Mining Corp. v. United States*, 946 F.2d 710, 713 (9th Cir. 1991). Under the APA,

a right of action first accrues at the time of the "final agency action." *See* 5 U.S.C. § 704; *Wind River*, 946 F.2d at 716 ("The right to bring a civil suit challenging an agency action accrues 'upon the completion of the administrative proceedings.'") (quoting *Crown Coat Front Co. v. United States*, 386 U.S. 503, 511 (1967)).

The Forest Service misreads Guardians' Claim Two, focusing on the 2006 decision that authorized winter travel designations under Amendment 24 to the 1986 Forest Plan, while disregarding the 2018 Decision that adopted those designations. An accurate reading of Guardians' Complaint shows the final agency action challenged under Claim Two accrued in December 2018.[4] Guardians challenge the Forest Service's conclusion, set out in its 2018 Decision, that the agency "completed subpart C" of the Travel Management Rule by adopting the 2006 designations and over-snow vehicle use map. (Doc. 23 at 70-71) ("The Forest Service's adoption of Amendment 24 as the over-snow vehicle use map in the revised Forest Plan and final ROD violate the 2015 Over-Snow Vehicle Rule because adopting existing over-snow vehicle use designations did not minimize damage . . . and continued to implement designations of closed areas rather than discrete, specifically delineated areas open to over-snow vehicle use," and "An

---

[4] Guardians need not rely on the increase in suitable over-snow vehicle areas to sustain this challenge under Claim Two, as the Forest Service suggests. (Doc. 29 at 10.) Nor is there any need to consider the exception to the statute of limitations set forth in *Wind River*. (Doc. 29 at 9, n.4.)

interpretation of the grandfather provision of Subpart C that allows the Forest Service to adopt prior designations under such circumstances violates the language and intent of the Travel Management Rule as well as Executive Order 11644."). As this court previously stated, "[w]hen a decision to continue a previous decision is part of a final agency action, it is reviewable by the courts and the clock for the six-year statute of limitations is reset." *Wildlands CPR, Inc. v. U.S. Forest Serv.*, 872 F. Supp. 2d 1064, 1071-1072 (D. Mont. 2012), *rev'd on other grounds*, *WildEarth Guardians*, 790 F.3d 920.

The Forest Service's 2018 Decision that concluded it completed Subpart C is final agency action. The APA defines "agency action" as "include[ing] the whole or part of an agency rule." 5 U.S.C. § 551(13). The Forest Service's conclusion is "an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy" of the Travel Management Rule, and thus it is a rule. *Id.* § 551(4). Because the Forest Service set forth its conclusion in its final Record of Decision, it "mark[s] the consummation of the agency's decisionmaking process." *Bennett v. Spear*, 520 U.S. 154, 177-178 (1997) (holding a Biological Opinion is final agency action because it "alter[s] the legal regime to which the action agency is subject"). The conclusion is "one by which rights or obligations have been determined or from which legal consequences flow," because it determines the Forest Service's legal obligations

under Subpart C. *Id.* The agency's conclusion that its 2018 Decision that adopts the 2006 designations and map completed Subpart C absolved the Forest Service from future winter travel planning duties, including application of minimization criteria and making winter motorized designations for the entire forest.

Simply because the Forest Service included this winter travel decision in its 2018 Forest Plan does not render the action programmatic in nature. *See High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630, 639 (9th Cir. 2004) (finding final agency action in a forest plan challenge where plaintiffs "alleged specific discrete actions taken by the Forest Service that have caused harm"). Forest plans generally are broad, programmatic blueprints for how to manage a forest. *See Citizens for Better Forestry v. U.S. Dep't of Agric.*, 341 F.3d 961, 966 (9th Cir. 2003) ("plans operate like zoning ordinances, defining broadly the uses allowed in various regions"). Here, however, the agency decided to address compliance with Subpart C of the Travel Management Rule – a project-level decision – as part of its forest plan revision. Any confusion resulting from the decision to fold a project-level decision into a forest plan is the product of the agency's own making.

The Forest Service cannot evade judicial review by glossing over the question of whether its conclusion about Subpart C is legally valid. The Forest Service argues the Subpart C rule "expressly exempted previous over-snow vehicle decisions . . . from the new 2015 designation criteria – including minimization."

19

(Doc. 29 at 11.) But this assertion goes to the heart of Guardians' challenge under Claim Two. Namely, whether the grandfather provision of Subpart C exempts previous designations from compliance with the Travel Management Rule at all, or merely allows the Forest Service to grandfather previous designations that comport with the minimization criteria and other legal requirements of the Travel Management Rule. (Doc. 23 at 71.) Guardians seek to prevent the Forest Service from using the grandfather provision to allow snowmobile use on the Flathead without first assessing whether such use complied with the minimization criteria. The proper interpretation of Subpart C's grandfather provision goes to the merits of Claim Two, and deserves judicial review in light of the full administrative record and complete summary judgment briefing.

Guardians did not "wait" to bring this challenge, as the Forest Service suggests. (Doc. 29 at 11.) The 2018 Decision is the first time that the Forest Service concluded, via final agency action, that the 2006 designations completed its duties under the 2015 Subpart C rule. In 2006, the Travel Management Rule exempted over-snow vehicles. It did not require the Forest Service to prohibit over-snow vehicles on forests except where designated open to motorized use. It did not require the Forest Service to consider or apply the minimization criteria. By its own description, the Forest Service "vigorously defended" its policy of not applying the minimization criteria when deciding whether to allow snowmobile

use in an area. 80 Fed. Reg. at 4502. The Forest Service adopted the 2015 version of Subpart C only after a court order directed it to do so. *Id.* Unlike the reinterpretation argument that the court rejected in *Hells Canyon Preservation Council v. U.S. Forest Service* as "simply not consistent with the record," here the record clearly shows a fundamental change in the agency's winter travel management rules in 2015. 593 F.3d 923, 931 (9th Cir. 2010). Because the 2015 Subpart C rule added requirements for winter travel planning that were not in place in 2006, Guardians could not have raised the allegations in Claim Two in a challenge to the 2006 decision. *See Gros Ventre Tribe v. United States*, 344 F. Supp. 2d 1221, 1228 (D. Mont. 2004), *aff'd* 469 F.3d 801 (9th Cir. 2006) ("The statute begins to run when a plaintiff has all necessary facts underlying his claims.") (internal citations omitted).

This court's decision in *Mont. Snowmobile Ass'n v. Wildes* supports Guardians, not the Forest Service. 103 F. Supp. 2d 1239 (D. Mont. 2000). There, the plaintiffs' "legal right to challenge the closure . . . to snowmobile use accrued when they had notice of the closure." *Id.* at 1243-44. Similarly, here Guardians' right to challenge the Forest Service's action did not accrue, and the statute of limitations did not begin to run, until the Forest Service purported to apply the grandfather provision of the 2015 Subpart C rule to conclude its 2006 designations completed and complied with Subpart C.

If the Forest Service had simply adopted the 2006 over-snow vehicle designations and map, without concluding they completed Subpart C, Guardians would not be challenging the Decision. In exhausting the administrative process for this Decision, Guardians repeatedly raised concerns that the Forest Service would attempt to rely on the grandfathering provision of Subpart C to avoid compliance with the Travel Management Rule. (Doc. 23 at 3.) Plaintiffs repeatedly warned that such a maneuver would be legally flawed.[5] *Id.* Yet the Forest Service forged ahead with the Decision to fold winter travel designations into its 2018 Forest Plan and rely on a flawed interpretation of the grandfather provision to conclude it completed Subpart C.

In sum, it is not the 2006 decision that is at issue here. Instead, it is the 2018 Decision, adopting the 2006 designations and concluding this completed and complied with Subpart C, that gives rise to Guardians' challenge under Claim Two. Because Guardians' Complaint alleges enough facts to establish the timeliness of Claim Two, this Court should deny the Forest Service's motion to dismiss based on the statute of limitations.

---

[5] The reasons why the agency's 2018 determination is flawed go to the merits of Plaintiffs' arguments, and should be addressed through summary judgment briefing in light of the full administrative record.

**C.     Guardians' Claim Two is Ripe for Judicial Review.**

The Forest Service argues the portion of Claim Two challenging the 2018

Forest Plan's suitability allocation is a substantive, programmatic challenge that

must wait until there is a site-specific action issued under the plan before it is ripe

for review. (Doc. 29 at 11.) This argument fails because it mischaracterizes the

agency action at issue.

In assessing whether an agency action is ripe for judicial review, courts

evaluate (1) the "fitness of the issues for judicial decision," and (2) the "hardship to

the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S.

136, 149 (1967), *abrogated by Califano v. Sanders*, 430 U.S. 99 (1977). Courts

consider "(1) whether delayed review would cause hardship to the plaintiffs; (2)

whether judicial intervention would inappropriately interfere with further

administrative action; and (3) whether the courts would benefit from further factual

development of the issues presented." *Ohio Forestry Ass'n, Inc. v. Sierra Club*,

523 U.S. 726, 733 (1998). Because the 2018 Decision and Forest Plan cause

irreparable harm to Guardians, immediate review will not interfere with

hypothetical future decisions, and further factual development is not needed, Claim

Two is ripe for judicial review.

First, delayed review will cause Guardians and its members hardship.

Guardians do not seek judicial review of future over-snow designations or future

revision of existing designations, as the Forest Service suggests. (Doc. 29 at 17.)

Rather, Guardians challenge the Forest Service's 2018 conclusions that it (1)

complied with the minimization criteria in allocating 567 new acres suitable for

snowmobile use, and (2) completed Subpart C. Taken together, these conclusions

have immediate and direct adverse effects on Guardians' interests in protecting

wildlife, wild places, and quiet landscapes on the Flathead from the impacts of

winter motorized use.

The Forest Service's conclusion that the suitability allocations complied

with the minimization criteria causes Guardians and its members immediate

hardship because it opens the door to increased winter motorized use in specific

areas without additional consideration of how it might damage forest resources,

harass wildlife, disrupt wildlife habitat, or conflict with other uses that Guardians

enjoy on the forest. (Doc. 23 at 6-7, 61-62.) For instance, the Forest Service

changed the suitability of a specific area by Marias Pass in the Middle Fork

geographic area to allow over-snow vehicle use. (Doc. 23 at 64). It changed the

suitability of a specific area between Soldier Creek and Bruce Creek in the South

Fork geographic area to allow over-snow vehicle use. *Id.* These changes to specific

areas will have direct impacts to grizzly bear, Canada lynx, and wolverine. (Doc.

23 at 60-62.) As the Supreme Court recognized in *Ohio Forestry*, when a forest

plan "allow(s) motorcycles into a bird-watching area or something [like that], that

would be immediately justiciable." *Id.* at 739 (quoting government attorney at oral argument).[6]

The suitability allocations also harm Guardians' long-standing interests in ensuring compliance with the Travel Management Rule. The Forest Service's assertion that the new suitability allocations complied with – and completed – its duties under the 2015 Subpart C rule is a legal conclusion that absolved the agency from the duty to conduct future winter travel planning to apply the minimization criteria or designate winter motorized use and prohibit such use elsewhere across the entire forest. Unlike in *Ohio Forestry*, where "the Plan d[id] not give anyone a legal right to cut trees, nor d[id] it abolish anyone's legal authority to object to trees being cut," 523 U.S. at 733, the Forest Service's Decision here established the 2006 designations and map as the final winter travel plan under Subpart C, affirmed legal rights to snowmobile in those areas, concluded the new suitability allocations complied with the minimization criteria, and foreclosed the possibility for Guardians to object during a future action. If Claim Two is not ripe for review

_____

[6] The Forest Service asserts the exception under *Ohio Forestry* does not apply because the Supreme Court's decision pre-dates the 2005 Travel Management Rule and 2015 Subpart C revision that require areas to be designated for motorized use. (Doc. 29 at 16.) But the Forest Service's own statements show the agency itself interprets the Travel Management Rule minimization criteria apply to more than just designation decisions. (Doc. 29-1 at 5) ("My decision to identify new areas suitable for motorized over-snow vehicles requires me to consider, with the objective of minimizing, the effects" under 36 CFR 212.55(b)).

now, there will likely never be a future opportunity to challenge the agency's

conclusions.

Again, the Forest Service mischaracterizes its action as a programmatic

decision. (Doc. 29 at 14.) Simply because the suitability allocations are part of the

2018 Forest Plan does not render programmatic the agency's legal conclusion that

it properly applied the minimization criteria. *See WildEarth Guardians*, 790 F.3d at

932 (explaining the Travel Management rule "is concerned with the effects of each

particularized area and trail designation" and "[t]he minimization criteria must be

applied accordingly."); *High Sierra Hikers Ass'n*, 390 F.3d at 639.

Further, the Forest Service argues existing over-snow vehicle use does not

constitute hardship because the 2006 designations have not changed. (Doc. 29 at

15.) Even though the 2006 designations have not changed, the agency's own rules

governing winter travel management fundamentally changed in 2015, and

currently require more, and different, analysis and protection of the environment

than did the 2005 rule that gave rise to the 2006 designations. In addition, there

have been significant technological advances in snowmobile capacity, changes in

use including snow bikes, and new information about imperiled wildlife and

habitat affected by over-snow vehicle use since 2006. (Doc. 23 at 37, 63.) The

Forest Service's conclusion that it complied with the 2015 Subpart C rule when it

allocated 567 new acres suitable for winter motorized use, despite these changes,

resulted in direct and immediate hardship to Guardians because it allowed for more winter motorized use in specific areas without considering how it will harass wildlife, disrupt wildlife habitat, and conflict with non-motorized uses that Guardians enjoy on the forest.

Second, judicial intervention will not interfere with further administrative action because the Forest Service's Decision is "at an administrative resting place." *Citizens for Better Forestry*, 341 F.3d at 977. A claim is ripe for review when it is not "merely tentative or interlocutory," but where the agency "has rendered its last word on the matter." *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 478 (2001). The decision-making process in this case is complete based on the agency's own record as set forth in its final 2018 Decision.

The Forest Service's conclusion that its new suitability allocations complied with the Travel Management Rule is a final agency action. The Forest Service itself stated that it was required to apply the minimization criteria in allocating 567 new acres suitable for winter motorized use, and concluded that it did so in its final Record of Decision that completed the administrative process. (Doc. 29-1 at 6) ("I believe my decision represents the feasible, prudent, and reasonable application of these criteria"); (Doc. 29-1 at 7) ("the land management plan is in compliance with the Travel Management Rule."). In the same Decision, the Forest Service concluded that it completed Subpart C. (Doc. 29-1 at 5.) By determining it has no

future legal obligations under Subpart C, the Forest Service's Decision is "one by which rights or obligations have been determined." *Bennett*, 520 U.S. at 178. *See also Or. Nat. Resources Council v. Harrell*, 52 F.3d 1499, 1503 (9th Cir. 1995) (explaining "it is more pragmatic to review [agency] action at the end of the agency's decision-making process"); *Montana Snowmobile Ass'n*, 103 F. Supp. 2d at 1240-1241 (holding a "[f]inal EIS and a Record of Decision [adopting a forest plan] are final agency actions").

The Supreme Court's decision in *Ohio Forestry* is distinguishable because there, the Forest Service had yet to propose a site-specific project to authorize clearcutting under the general, forest-wide plan components that plaintiffs challenged. 523 U.S. at 735-736 (noting "the possibility that further consideration will actually occur before the Plan is implemented is not theoretical, but real"). By contrast, here the 2018 Decision adopted a site-specific winter travel plan as part of the 2018 Forest Plan, concluded its suitability allocations complied with the Travel Management Rule, and concluded it completed Subpart C. Taken together, these conclusions indicate the Decision is final.

The Forest Service points to *Center for Biological Diversity v. Ilano*, where the court held the Forest Service's designation of landscape-scale areas under the Healthy Forests Restoration Act did not trigger the duty to analyze environmental impacts under NEPA. (Doc. 29 at 17, n.6) (citing 928 F.3d 774, 780 (9th Cir.

2019)). But the Forest Service did not move to dismiss any portion of Guardians'

NEPA claim, and therefore *Ilano* is irrelevant. Even in the context of the Travel

Management Rule, *Ilano* does not apply because that case turned on the threshold

question of NEPA applicability. *Id.* 778-781. By contrast, here both the Forest

Service and Guardians agree that compliance with the Travel Management Rule is

required in making the suitability allocations, not just designations. (Doc. 29-1 at

5-7.) Guardians challenges the adequacy of the agency's application of the

minimization criteria.

      The Forest Service cites cases requiring challenges to forest-wide

management practices be made in the context of site-specific actions, but those

cases do not apply here. *Compare*, *Ecology Ctr. v. Castaneda*, 574 F.3d 652, 658

(9th Cir. 2009) (declining to review challenges to forest-wide practices not tied to

site-specific actions), *and Ecology Ctr., Inc. v. U.S. Forest Serv.*, 192 F.3d 922,

925 (9th Cir. 1999) (rejecting challenge to agency's failure to conduct forest-wide

monitoring), *and Or. Nat. Desert Ass'n v. Shuford*, Civ. No. 06-242-AA, 2007 WL

1695162 (D. Or. June 8, 2007) (rejecting challenge to grazing allocations where

plan did "not in and of itself authorize grazing in any specific allotment") *with*

*WildEarth Guardians*, 790 F.3d at 929 (reviewing Travel Management Rule

challenge to over-snow vehicle designations in forest plan). Unlike the general,

forest-wide plan components that require site-specific projects before

implementation, the suitability allocations together with the 2006 designations and conclusion that Subpart C is complete implemented the Forest Service's winter travel management decisions and are immediately justiciable.

The Forest Service has made no enforceable commitment to conduct future winter travel planning. Guardians' Complaint notes that the Forest Service claimed it "will initiate site-specific planning within three years from the date of the final [Record of Decision] for the 2018 Forest Plan where an existing order may need to be changed in light of the 2018 Forest Plan suitability direction." (Doc. 23 at 64.) But this statement directly contradicts the Forest Service's conclusion within the same Decision document that the agency completed Subpart C, foreclosing any duty to conduct future winter travel planning. And the agency qualified its so-called "commitment" by pointing to a hypothetical future determination of "where an existing order may need to be changed." The Forest Service cannot have it both ways. Drawing "all reasonable inferences . . . in [Guardians'] favor," the contradicting assertions and qualification negate any concrete, enforceable commitment to conduct future site-specific planning. *Pride*, 719 F.3d at 1133.

Thus, if this Court dismisses Claim Two there will likely be no future opportunity to challenge the Forest Service's conclusion that the suitability allocations complied with the minimization criteria. As such, it is unlikely judicial review will "turn out to have been unnecessary" as was the case in *Ohio Forestry*.

*Id.* at 736. Instead, Guardians are "taking advantage of what may be their only opportunity to challenge" the Forest Service's Decision. *California v. U.S. Dep't of Agric.*, 575 F.3d 999, 1011 (9th Cir. 2009) (holding challenge to final rule was ripe because review would not interfere with further administrative action).

Finally, this Court does not need further factual development to resolve the legal question at issue. The Forest Service points to Guardians' interest in participating in travel management decisions, and notes that new designations would be subject to minimization and monitoring. (Doc. 29 at 16.) But because the Forest Service concluded it completed Subpart C, any possible future winter travel planning is unlikely. The Forest Service asserts that review of Claim Two now would require "time-consuming consideration of the details of an elaborate, technically based" travel management decision, but ignores the elaborate, technically based administrative record supporting the 2018 Decision. (Doc. 29 at 16.) Simply because a decision is complex does not bar it from judicial scrutiny.

Tellingly, the Forest Service does not identify any particular additional, "site-specific" information that would aid in the Court's resolution of whether the 2018 Decision's new suitability allocations complied with the minimization criteria. Unlike the abstract claims at issue in *Ohio Forestry* where there was no project at issue to evaluate the legality of the plan components, here the Forest Service explained in detail in its Decision why it believed the new suitability

allocations complied with the minimization criteria. (Doc. 29-1 at 5-7.). This

provides a completely developed rationale upon which to evaluate the legality of

the suitability allocations.

Guardians' challenge to the 2018 Decision is not the "kind of 'abstract

disagreement[] over administrative policies' . . . that the ripeness doctrine seeks to

avoid." *Ohio Forestry*, 523 U.S. at 736 (quoting *Abbott Labs.*, 387 U.S. at 148).

The cases cited by the Forest Service that challenge possible future agency action

are not relevant here because Guardians challenges a final agency determination

the Forest Service has already made. *Mt. Adams Veneer Co. v. United States*, 896

F.2d 339, 344 (9th Cir. 1990) (holding challenge to a "possible decision" was not

ripe for review "[s]ince the agency ha[d] not acted"); *Defenders of Wildlife v. Hall*,

807 F. Supp. 2d 972, 980 (D. Mont. 2011) (rejecting plaintiff's claims as not ripe

where "the tribes ha[d] not submitted a wolf removal plan and show[ed] no

intention of doing so"); *S. Utah Wilderness All. v. Burke*, 908 F.3d 630, 635 (10th

Cir. 2018) (rejecting challenge as unripe because "there [we]re no final travel

management plans"). Because the Forest Service concluded in its final Decision

that its new suitability allocations complied with the minimization criteria and that

it completed Subpart C, Guardians' Claim Two challenges a concrete, final action

that is ripe for judicial review.

Taking all factual allegations in Guardians' Complaint as true and drawing all reasonable inferences in Guardians' favor, Claim Two is ripe for judicial review because delaying review will cause hardship to Guardians and its members, judicial intervention will not interfere, and no additional facts are needed.

## V.    CONCLUSION

For the foregoing reasons, Guardians respectfully requests that this Court deny the Forest Service's motion to dismiss. Further, Guardians respectfully requests that in resolving this motion to dismiss, regardless of the result, that the Court set a deadline for the Forest Service to file an answer to Guardians' first amended complaint prior to the current January 24, 2019 deadline for Guardians to file summary judgment papers.

Respectfully submitted on the 14th day of November, 2019.


/s/ Marla Fox
Marla Fox, *pro hac vice*
WildEarth Guardians
P.O. Box 13086
Portland, OR 97213
Ph: (651) 434-7737
mfox@wildearthguardians.org

*Counsel for Plaintiff WildEarth Guardians*


/s/ Kelly E. Nokes
Kelly E. Nokes (Mont. Bar No. 39465862)
Western Environmental Law Center
208 Paseo del Pueblo Sur, No. 602

Taos, NM 87571
Ph: (575) 613-8051
nokes@westernlaw.org

/s/ Susan Jane Brown
Susan Jane M. Brown, *pro hac vice*
Western Environmental Law Center
4107 NE Couch St.
Portland, OR 97232
Ph: (503) 680-5513
brown@westernlaw.org

/s/ John R. Mellgren
John R. Mellgren, *pro hac vice*
Western Environmental Law Center
120 Shelton McMurphey Blvd., Ste. 340
Eugene, OR 97401
Ph: (541) 359-0990
mellgren@westernlaw.org

*Counsel for Plaintiffs*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(d)(2)(E), the undersigned certifies there are 6,366 words in this brief as counted using the word count feature in Microsoft Word, excluding the caption, table of contents, table of authorities, signature blocks, certificate of compliance, and exhibit index.

/s/ Marla Fox
Marla Fox, *pro hac vice*
*Counsel for Plaintiff WildEarth Guardians*